## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, Gary J. Sukowatey II, a Special Agent (SA) with the Federal Bureau of Investigation (hereinafter "FBI"), Cleveland Division, being duly sworn, depose and state as follows:

## AGENT BACKGROUND

1. I am an investigative or law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7); that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, the offenses enumerated in 18 U.S.C § 2516. I have been trained in advanced investigative techniques and have satisfied all requirements defined by the Federal Criminal Investigator Classification series established by the U.S. Office of Personnel Management.

2. I have been employed by the FBI as a Special Agent since June 2015 and have been assigned to the Cleveland Division since November 2015. I have been assigned to and participated in investigations in the area of general criminal matters, as well as the Joint Terrorism Task Force, which investigates, among other offenses, firearms violations. I have participated in all the usual methods of investigation including, but not limited to, financial analysis, physical surveillance, cooperating witnesses, confidential human sources, telephone toll record analysis, interceptions of wire and cellular telephone communications, consensual monitoring, and the execution of search and arrest warrants.

3. Over the course of my employment as an FBI Special Agent, I have conducted and participated in multiple criminal investigations that have resulted in arrests for criminal offenses. These crimes resulted in subsequent convictions in Federal Courts.

4. This affidavit is being submitted for the limited purpose of establishing probable cause to believe that OLIVER SMITH, age 51, has violated Title 18 U.S.C. § 842(i)(1), Felon in Possession of Explosive Materials; Title 18 U.S.C. § 922(g)(1), Felon in Possession of a Firearm; and 26 U.S.C. § 5861(d) and (i), Possession of an Unregistered Silencer, as set forth below:

   a. Title 18 U.S.C. § 842(i)(1): Felon in Possession of Explosive Materials; It is unlawful for any person who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year to receive or possess any explosive which has been shipped or transported in or affecting interstate or foreign commerce;

   b. Title 18 U.S.C. § 922(g)(1): Felon in Possession of a Firearm; It shall be unlawful for any person who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year to possess any firearm or ammunition that has traveled in or affects interstate commerce;

   c. Title 26 U.S.C. § 5861(d) and (i): Possession of an Unregistered Silencer; It shall be unlawful for any person to receive or possess a firearm or silencer which is not registered to him in the National Firearms Registration and Transfer Record, or possess a firearm or silencers which is not identified by a serial number.

5. The statements contained in this affidavit are based in part on: information provided by FBI Special Agents, Task Force Officers and FBI Analysts, written reports about this and other investigations that I have received, directly or indirectly, from other law enforcement agents, information gathered from the results of physical

surveillance conducted by law enforcement agents, reporting by eye witnesses, independent investigation and analysis by FBI agents/analysts and computer forensic professionals, and my experience, training and background as a Special Agent of the FBI. Because this affidavit is being submitted for the limited purpose of securing a criminal complaint, I have not included each and every fact known to me concerning this investigation. Instead, I have set forth only the facts that I believe are necessary to establish the necessary foundation for the requested complaint.

## JURISDICTION

6. This Court has jurisdiction to issue the requested complain and arrest warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. §§ 2711, 2703(a), 2703(b)(1)(A), and 2703 (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## BASIS FOR PROBABLE CAUSE

7. On or about October 6, 2020, I spoke via telephone with SMITH's Parole Officer with Ohio Department of Rehabilitation and Correction, Adult Parole Authority (hereinafter "APA") who informed me that on or about October 3, 2020, he (SMITH's parole Officer) received notice from H.A.[1], that SMITH had in his possession a firearm with an attached silencer at his residence known to be 2828 Hillman Avenue, Youngstown, Ohio. H.A. resided with SMITH at his residence at various times in 2020. SMITH was on Community Control under supervision of

---

[1] Initials of witnesses will be used to protect their identities. All individuals are known to your affiant.

APA related to a previous conviction of Possession of Drugs pursuant to Ohio Revised Code § 2925.11, a Felony 5 offense. Additionally, in 1999 SMITH was convicted of Aggravated Assault, an F2 Felony, in the Commonwealth of Pennsylvania, in case CP-51-CR-060071-1999 in 1999.

8. On or about October 5, 2020, APA and Bureau of Alcohol, Tobacco, Firearms and Explosives (hereinafter "ATF") officers conducted a home visit at SMITH's listed and approved residence with APA, the Hillman address annotated above. SMITH's parole officer attempted to contact SMITH via cellphone before arriving at the residence with no answer. Officers then went to SMITH's residence located at the Hillman address annotated above. After knocking and announcing their presence repeatedly for approximately five minutes, officers called SMITH's known cellular telephone number. Officers could hear SMITH's cellphone ringing inside the residence. Officers then began knocking on the residence even louder. Officers then heard shuffling from behind the door and SMITH called the parole officer back. The parole officer instructed SMITH to come to the door and eventually, SMITH came to the door. Officers made contact with SMITH and entered the residence. SMITH and his parole officer reviewed and signed new conditions of supervision. After reviewing the conditions, SMITH and officers conducted a walkthrough of the residence together. Also present inside the residence was A.Y, a female described as a romantic companion of SMITH.

9. APA officers advised SMITH it took him too long to answer the door and that officers had been knocking and yelling for approximately five minutes. SMITH told officers he thought the knocking on the door was his ex-girlfriend. Officers assessed

that SMITH's account was unreasonable because the officers repeatedly and loudly yelled their presence; furthermore, SMITH's parole officer was male and his voice would reasonably be distinguished as not being SMITH's ex-girlfriend who was female. Additionally, SMITH's parole officer was known to SMITH. Due to the timeframe it took for SMITH to answer the door and items visible in plain view during the walkthrough of the residence, additional officers were contacted for assistance to further examine SMITH's residence.

10. SMITH's parole officer informed SMITH that they would be conducting a search of SMITH's residence under the authority of the APA. Officers noticed several prohibited items visible in plain view inside of SMITH's residence. APA detained SMITH and contacted Youngstown (Ohio) Police Department (hereinafter "YPD") to assist with searching SMITH's residence.

11. Upon further examination of SMITH's residence, prohibited items were found which included a firearm which had a silencer attached as well as ammunition. The firearm, with a silencer attached, was located in SMITH's bedroom when officers lifted up the mattress. This evidence was seized by YPD.

12. On or about October 5, 2020 SMITH was informed of his rights under Miranda, signed advice of rights and waiver form and then agreed to speak with officers without a lawyer present. SMITH also agreed to provide written consent for officers to take his cellular telephone and several pieces of electronic media observed prior to the protective sweep.

13. SMITH initially told officers the firearm was put under his mattress without his knowledge, then later stated that he retrieved the firearm from the dresser drawer and

placed underneath the mattress. SMITH told officers that there were firearms, ammunition and other weapons in his residence. SMITH acknowledged that he was aware that he was not allowed to possess firearms and/or ammunition and that he had an obligation to report prohibited items inside of his residence to APA. SMITH advised he did not report the prohibited items because he thought the police would take them away and that he would throw them away instead. SMITH was transported to Mahoning County Justice Center on charges of Weapons Under Disability (Ohio Revised Code § 2923.13, a Felony 3 offense) by YPD.

14. On or about October 6, I spoke with H.A. on the phone during a recorded interview. H.A. stated that she resided with SMITH at the Hillman address from approximately December 2019 until late August or early September 2020. She stated she moved out, but SMITH continued to reside there. H.A. knew during that time SMITH possessed a .22 caliber handgun that he acquired from an unknown individual in the Youngstown, Ohio area as well as other firearms, one of which SMITH had built a silencer for and kept at the premises. H.A. advised that she also observed many tactical accessories such as firearm magazines, swords, tactical vests, etc. in the residence.

15. On or about October 7, 2020, a second search of SMITH's residence was performed by the FBI. Recovered from SMITH's residence were two arrows which were modified and filled with explosive powder, wrapped in tape with nails, and tipped with detonators. Upon examination by FBI agents trained in explosive devices, these arrows were determined to be functional and could explode on impact.

16. Also recovered were two devices filled with explosive powder and filled with ball bearings. Upon examination by FBI agents trained in explosive devices, these devices were determined to be functional and would explode upon electrical initiation of the explosive train propelling the ball bearings as shrapnel. Moreover, FBI agents familiar with the distributors of the items recovered from SMITH's house identified them as being produced and sold from outside the State of Ohio.

17. Finally, ammunition that could be fired from the revolver was recovered, as well as primers for explosive devices, bomb precursor chemicals, ball bearings, wires, and other bomb making components and instructions.

18. On or about October 14, 2020, I received and reviewed evidence items from YPD, including but not limited to the above referenced handgun with silencer attached, explosive devices and materials and ammunition. The evidence items remain in FBI custody.

19. On December 22, 2020, I received a report from FBI firearm laboratories which confirmed that the revolver was made in Germany and was functional. The report also confirmed that the silencer had baffles and expansion chambers that rendered it functional and that it did not have a serial number or was not identifiable as being registered on any federal registries or databases.

## **CONCLUSION**

20. Based on the preceding, probable cause exists to believe that OLIVER SMITH, has violated Title 18 U.S.C. § 842(i)(1) [felon in possession of explosive materials], Title

18 U.S.C. § 922(g)(1) [felon in possession of a firearm] and 26 U.S.C. § 5861(d) [possession of an unregistered silencer].

Respectfully submitted,

Gary J. Sukowatey II
Special Agent
Federal Bureau of Investigation

Sworn to via telephone after submission by reliable electronic means. Fed. R. Crim. P. 3, 4(d), and 4.1, on this __11th__ day of January 2021.

HONORABLE CARMEN E. HENDERSON
UNITED STATES MAGISTRATE JUDGE