IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF OHIO

EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 4:21CR0020 |
| | ) | |
| Plaintiff, | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| v. | ) | |
| | ) | SENTENCING MEMORANDUM |
| OLIVER SMITH, | ) | |
| | ) | |
| Defendant. | ) | |

## I.     Factual Background

On or about October 5, 2020, special agents and bomb technicians with the Federal Bureau of Investigation (FBI) Cleveland Division responded to the residence of Oliver SMITH, (SMITH), located at 2828 Hillman Street, Youngstown, Ohio. Already at the scene were members of the Youngstown Police Bomb Squad, the Alcohol Tobacco and Firearms (ATF) and Ohio Adult Parole. ATF Agent Larry Ward, (Ward), Ward indicated that during the execution of an Ohio Adult Parole Search, they had recovered two explosive devices, two firearms, ammunition, and a silencer at the location. Additional searches of the location recovered remote controlled detonators, additional explosive material, shipping and packaging materials, and other items used in the manufacture of improvised explosive devices (IEDs).

Specific improvised explosive devices recovered from SMITH's residence included two crossbow bolts, commonly called arrows, that were filled with explosive black powder; the shaft of the bolts were wrapped in nails. Examination of the arrows by FBI personnel trained in explosives revealed that the tip of the bolts had a nail that would ignite a small blasting cap upon

1

impact, which would in turn cause the powder in the arrow to explode. As a result of the explosion, the nails surrounding the bolt's shaft would act as shrapnel.

Also recovered were two boxes filled with explosive black powder and ball bearings. These boxes were connected to ignition devices that could be detonated remotely; upon ignition of the powder the ball bearings would function as shrapnel. Agents also recovered packaging materials, bills of lading, and online evidence showing that SMITH purchased these items over time to avoid detection.

Finally, recovered from under a mattress in SMITH's bedroom was a .22 caliber pistol and a silencer. Both the firearm and the unregistered silencer were sent for analysis and it was determined that the firearm was operable and the silencer was constructed in a manner that would baffle and dampen the noise of the firearm being fired.

During an interview with agents, SMITH stated he was previously enlisted in the United States Army and National Guard as a combat engineer and was deployed to Somalia with the Army. SMITH also stated he had explosive devices at his residence because he wanted to show his children how to construct them and handle them safely. This statement was contradicted by his former girlfriend who said he was making explosive devices for a civil war he thought was imminent.

**II.     Guideline Calculation**

The government agrees with the calculation contained in the Presentence Report filed on June 11, 2021. (R: 20, Report, PageID 70-86). Specifically, the Report listed the Base Offense Level at 20, with a two-level increase for possession of multiple improvised explosive devices. The report decreased the level by three levels for acceptance of responsibility for an Adjusted Base Offense of 19. (R: 20, Report, PageID 74-75). Assigning SMITH with a Criminal History

Category of II, (R: 20, Report, PageID 77), the Sentencing Guideline was properly calculated to be 33-41 months.  (R: 20, Report, PageID 80).

### III.     SMITH Should Receive a Sentence at the High End of the Guidelines

The government recognizes several medical issues that are properly considered as part of the considerations required by 18 U.S.C. § 3553.  Specifically, SMITH suffers from a history of post-traumatic stress disorder, bi-polar disorder, schizophrenia, diabetes, high blood pressure, high cholesterol and respiratory issues.  (R: 20, Report, PageID 79).  SMITH received an honorable discharge from the Army and appears to have some post-GED education through several colleges.  This history poses a number of contrasting interests in fashioning a sentence that is sufficient, but not greater than necessary to meet the ends of justice.  While SMITH suffers from several mental and physical challenges that need addressed during his incarceration and post-release rehabilitation, and his history of education and honorable separation with the military suggest he is amenable to assistance, SMITH's criminal history, lack of meaningful ties to the area, nature and circumstances of the case, and his statements to law enforcement are all characteristics that recommend a sentence at the high end of the Guidelines.

Simply, SMITH poses an going danger to the community; he manufactured explosive devices in the basement of his home, he stored the materials for those devices in his home, and he obtained and kept a firearm outfitted with a silencer, all while prohibited as a condition of probation.  These materials, moreover, were designed by him to be detonated remotely and expel shrapnel with a blast radius to inflict additional damage and injury.  While in his statement of acceptance he offered to destroy them and never make more, he has demonstrated that he has not followed the conditions of probation in the past.  There is little doubt he accepts responsibility for his instant actions, but those actions are inconsistent with his statement to the Court.  The

3

government fears that it would be only a matter of time before SMITH starts compiling explosive materials and constructing devices again. His prior pattern of slowly making purchases to avoid detection or reporting supports that belief, and the thought and deliberation he put into crafting exploding arrows and remote controlled devices speak for themselves to underscore his true intentions.

    SMITH's background also suggests he is a continued danger. SMITH was trained by the military, repeatedly joining and rejoining the Army, and put that training to use in constructing devices. Despite his age and his health, he still has a base of knowledge that he drew upon in his bomb making activities. Moreover, that knowledge was put to use to construct devices, exploding arrows and remote-detonation IEDs, that are beyond the norm of regular military training. It is difficult to fully accept his suggestion he will stop doing what he had been doing while on parole and what he has shown a compelling interest in: namely, making improvised explosive devices. Despite his age, despite his health, despite his being on parole, SMITH persisted in manufacture many types of improvised devices, and thus, to protect society, he should receive a within-Guidelines sentence that is reasonable, but not greater than necessary to meet the interests of justice of 41 months incarceration.

                                Respectfully submitted,

                                BRIDGET M. BRENNAN
                                Acting United States Attorney

        By:     /s/ Duncan T. Brown
                    Duncan T. Brown
                    Reg. No. 3982931(NY)
                    Assistant United States Attorney
                    United States Courthouse, Suite 400
                    801 West Superior Avenue
                    Cleveland, Ohio 44113
                    Telephone: (216)622-3933
                    Facsimile: (216) 685-2378